**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON**

**CIVIL ACTION NO. 16-180-DLB**

**SHANNON CROMER**                                               **PLAINTIFF**

vs.                         **MEMORANDUM OPINION & ORDER**

**NANCY A. BERRYHILL, Acting
Commissioner of Social Security**                               **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, hereby affirms the decision of the Commissioner.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on August 16, 2012, alleging disability beginning December 31, 2011. (Tr. 15). Plaintiff's applications for SSI and DIB were denied on January 9, 2013. (Tr. 15). Plaintiff appealed, and her Request for Reconsideration was denied on April 16, 2013. (Tr. 15). Plaintiff then filed a Request for Hearing by Administrative Law Judge. (Tr. 15). On October 24, 2014, Administrative Law Judge (ALJ) Ronald M. Kayser ruled that Plaintiff was not entitled to DIB or SSI. (Tr. 15-26). The decision became final on April 7, 2016, when the Appeals Council denied review of Plaintiff's claim. (Tr. 1-6). On

1

June 3, 2016, Plaintiff filed suit in this Court. (Doc. # 1). The parties then filed Cross-Motions for Summary Judgment, which are now ripe for review. (Docs. # 12 & 15).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Cutlip*, 25 F.3d at 286. Instead, the Court must affirm the Commissioner's decision if it is supported by substantial evidence even if the Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). However, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right," even if the decision is supported by substantial evidence. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his

2

or her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy that the claimant can perform. For the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. The ALJ's Determination

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of December 31, 2011. (Tr. 18). At Step 2, the ALJ found that the Plaintiff had the following severe impairments: morbid obesity, fibromyalgia, inflammatory polyarthritis, degenerative disc disease, right shoulder pain status post surgery, and anxiety/affective disorders. (Tr. 18).

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equivalent to, 20 C.F.R. pt. 404, Subpt. P, App. 1. (Tr. 21). The ALJ reviewed Plaintiff's medical records and determined that there was no evidence to establish that she "is unable to ambulate effectively" under Listing 1.00B2b or that she has "extreme loss of function of both upper extremities" as in Listing 1.00B2c. (Tr. 21). In addition, the ALJ found that Plaintiff's fibromyalgia "fail[ed] to meet the criteria of any musculoskeletal listing" in Listing 1.00. (Tr. 22). The ALJ further found that Plaintiff did not meet the requirements for mental disorders under Listing 12 because "the evidence does not establish marked limitations on daily living, social functioning or concentration, persistence or pace and there are no repeated episodes of decompensation." (Tr. 22).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform a reduced range of light work. (Tr. 22-24). Plaintiff's limitations include:

> [S]tand/walk six hours out of eight and sit six hours out of eight; no limits on pushing and pulling up to the exertional limits; cannot climb rope, ladders or scaffolds but can frequently climb ramps and stairs; can occasionally balance, stoop, crouch, kneel or crawl; is occasionally able to reach overhead with the right upper extremity. She tested in the borderline intellectual functioning level with the ability to read on a high school level and has the ability to adequately perform skills in a work setting; can perform routine work tasks effectively over time; would work best in a job that did not require constant interaction with coworkers and supervisors[;] is able to adapt adequately to perform effectively within the work setting.

(Tr. 22). Additionally, the ALJ concluded that the Plaintiff is able to perform her past relevant work as an assembly worker and temporary laborer. (Tr. 24-25).

Nevertheless, the ALJ proceeded to Step 5 and found that there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 25-26). In making this conclusion, the ALJ consulted a vocational expert (VE) and inquired whether jobs existed in the national economy for an individual of claimant's age, education, work experience, and RFC. (*Id.*) The VE testified that Plaintiff could find work at the light exertional level as a machine attendant (3,000 jobs in Kentucky, 206,000 jobs nationally) and a non-hazardous security guard (4,300 jobs in Kentucky, 330,000 nationally). (*Id.*) The VE further listed a sedentary job with the same nonexertional limitation: surveillance monitor (1,400 jobs in Kentucky, 109,000 nationally). (*Id.*) Based on these findings, the ALJ concluded that Plaintiff was capable of adjusting to other work and therefore not under a disability, as defined in the Social Security Act. (Tr. 26).

**C. Analysis**

Plaintiff alleges three errors in the ALJ's determination. First, Plaintiff takes issue with the ALJ's credibility determination and claims that the ALJ did not consider the entire

4

record and failed to give "specific or accurate reasons for rejecting" Plaintiff's allegations of various physical and mental impairments. Second, Plaintiff argues that the ALJ ignored the opinions and objective medical findings of Dr. Nold and Dr. Fishkoff, who conducted physical and psychological consultative evaluations of Plaintiff. Third, Plaintiff argues that the ALJ's opinion is not supported by substantial evidence. (Doc. # 14-1 at 7-15).[1]

### 1. The ALJ did not err in assessing Plaintiff's credibility.

Although relevant to the RFC assessment, a claimant's description of his or her symptoms is not enough, on its own, to establish the existence of physical or mental impairments or disability. 20 C.F.R. § 404.1529(a). When evaluating a claimant's symptoms, the ALJ must determine whether there is an underlying medically determinable impairment that could be reasonably expected to produce the alleged symptoms. *Id.* Once that is established, the ALJ must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. *Id.* § 404.1529(c).

When a claimant's complaints regarding the intensity and persistence of her symptoms are unsupported by objective medical evidence, the ALJ must make a credibility determination "based on a consideration of the entire case record," including lab findings, information from treating physicians, Plaintiff's complaints of symptoms, and other relevant evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4). After making a credibility determination, the ALJ must explain that decision with enough specificity "to make clear

---

[1] The Court cites to Doc. # 14-1 in referring to Plaintiff's Memorandum in Support of Her Motion for Summary Judgment because it corrects formatting oddities that made the previously filed versions more difficult to read (Docs. # 12-1, 13-1). (*See* Doc. # 14).

5

to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." 20 C.F.R. § 404.1529; Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2. "Blanket assertions that the claimant is not believable will not pass muster, nor will explanation as to the credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Once the ALJ has made the credibility determination, the reviewing court must give great weight and deference to that conclusion. *Id.*

Plaintiff complains that the ALJ "did not give specific or accurate reasons for rejecting" her allegations of the severity and intensity of her pain and psychological symptoms. (Doc. # 14-1 at 6-15). Plaintiff also claims that the ALJ ignored objective medical evidence that supported her allegations. *Id.* However, the record shows that the ALJ's credibility determinations about the extent to which Plaintiff's symptoms affect her RFC are properly supported.

To be clear, the ALJ found at Step 2 that Plaintiff *did* have severe impairments of morbid obesity, fibromyalgia, inflammatory polyarthritis, degenerative disc disease, right shoulder pain status post surgery, and anxiety/affective disorders. (Tr. 18). The presence of those impairments is not in dispute. However, although the ALJ found that Plaintiff had the above-listed impairments at Step 2, a severe impairment at Step 2 does *not* require a specific RFC at Step 4. *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007); *Adams v. Comm'r of Soc. Sec.*, No. 4:13-cv-22, 2014 WL 3368692, at *16 (E.D. Tenn. July 9, 2014) ("A finding that an impairment is severe at step two does not necessarily require that the ALJ include greater limitations in the RFC specific to that impairment, as the limitations in the RFC may adequately address that impairment.").

Plaintiff's RFC describes "what [she] can do, not what maladies [she] suffers from– though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). A "severe impairment may or may not affect [a claimant's] functional capacity to do work," but "[o]ne does not establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (internal quotation marks omitted).

At Step 4, the ALJ found that the Plaintiff's "medically determinable physical or mental impairment(s) . . . could reasonably expected to produce the claimant's pain or other symptoms." (Tr. 22). However, the ALJ determined that Plaintiff's "description of pain and symptoms has . . . been so extreme as to appear implausible," which "leaves an impression she is less than candid in her description." (Tr. 23). The ALJ further explained that Plaintiff's testimony regarding her symptoms and limitations was inconsistent with the medical evidence, meaning that "her allegations are of limited weight." (Tr. 24). Although "[s]he does have a number of problems," the ALJ determined that Plaintiff's pain and other symptoms do not affect her "to the extent to preclude a range of light work" as described in the RFC. *Id.*

### a. Fibromyalgia

Plaintiff first argues that the ALJ erred in evaluating the severity of her fibromyalgia in violation of *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). (Doc. # 14-1 at 7). In *Rogers*, the Sixth Circuit held that the ALJ failed to support a credibility determination with substantial evidence because he over-emphasized the lack of objective medical evidence for fibromyalgia, misconstrued the daily activities performed by the claimant, and improperly considered that the best treatment for fibromyalgia is

exercise. *Id.* at 248-49. Here, by contrast, the ALJ credited Plaintiff's fibromyalgia diagnosis, including her 11 of 18 points of tenderness, and supported his credibility determination about Plaintiff's severity and persistence of pain symptoms with substantial evidence, including contradictions in the record and his own observations of Plaintiff's limitations. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ explained that, despite "claiming symptoms are present constantly or all the time without remission," Plaintiff did not have noticeable difficulty sitting during the March 2014 hearing. (Tr. 22-23). In addition, at the same hearing, Plaintiff rated her pain at a level ten on a one-to-ten scale, a level the ALJ had described to her as "equivalent to putting your hand in a pot of boiling water" or "screaming" pain. (Tr. 70-71). Given the lack of emergency room visits for such an extreme and unrelenting level of pain, the ALJ was left with the "impression [that] she is less than candid in her description." (Tr. 23, 71). Plaintiff also explained that her medication at times reduced her pain to a "tolerable" level, which was about a "six." (Tr. 71). The ALJ noted that the medical evidence shows that, despite her allegations of pain, Plaintiff had no more than a moderately limited range of motion, the ability to walk on her heels, and normal upright posture and gait. (Tr. 18-19, 24, 426, 429, 433, 579, 600, 633, 666, 685).[2]

---

2   Although the ALJ did include some analysis of the effect of Plaintiff's impairments on her ability to work in his discussion at Step 2 instead of Step 4, "[i]t is proper to read the ALJ's decision as a whole" and "it would be a needless formality to have the ALJ repeat substantially similar factual analyses" at both Steps 2 and 4. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).

### b. Arthritis

The same is true of Plaintiff's argument about the symptoms of her inflammatory polyarthritis and rheumatoid arthritis. As with fibromyalgia, the ALJ did include "inflammatory polyarthritis" as a severe impairment at Step 2, but that does not necessarily require a specific reduction in Plaintiff's RFC at Step 4 or indicate that the ALJ's credibility determination is not supported by substantial evidence. With respect to her arthritis, which Plaintiff explained is worst in her hands, the ALJ noted record evidence that Plaintiff had "full range[] of motion for the elbows [and] wrists." (Tr. 18). Plaintiff also had x-rays that revealed no abnormalities in her hands (Tr. 581, 687) and the ALJ observed at the March 2014 hearing that Plaintiff's hands were not swollen. (Tr. 18, 23). The ALJ also found no evidence to support Plaintiff's claims that she took up to a day-and-a-half to recover from injections designed to treat her arthritis. (Tr. 23).

Plaintiff also faults the ALJ for not mentioning certain findings from her rheumatologist, Dr. Ahmed, including that Plaintiff's Routine Assessment of Patient Index Data (RAPID-3) scores were consistently in the high-severity range for rheumatoid arthritis. (Doc. # 14-1 at 8). But while the ALJ must consider the record as a whole, the ALJ need not address every piece of evidence in the record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). The ALJ examined the record as a whole and determined that, although Plaintiff had the severe impairment of inflammatory polyarthritis and there was certainly "a basis for her complaints," the evidence did not support Plaintiff's complaints "to the degree alleged." (Tr. 19).

### c. Lower back pain

Plaintiff also argues that the ALJ discounted the severity of her lower back pain, including leaving out important findings by Dr. Rutledge and misstating the results of her examination by Dr. Rasheed. Again, the fact that the ALJ did not mention every medical record written by Dr. Rutledge, a pain specialist, does not mean that the ALJ's opinion is not supported by substantial evidence. Dr. Rutledge explained that, with pain medication, Plaintiff's pain ranged from mild to moderate, and that her side effect profile from taking medication was good. (Tr. 23, 498). Again, this conflicted with Plaintiff's claims that her "symptoms are present constantly or all the time without remission" and with her reports of "medication side effects." (Tr. 23). Plaintiff had previously told Dr. Rutledge that her medication allowed her to do chores and other activities throughout the day. (Tr. 19 & n.5, 493). Moreover, the ALJ noted that Plaintiff was not credible in her assertion that she could not perform work consistent with the RFC because, after her shoulder surgery, she took care of her sister and brother-in-law. (Tr. 23, 493, 544).

Plaintiff further claims that the ALJ's statement that Dr. Rasheed reported an unremarkable physical examination in September 2013 is "not true." (Doc. # 14-1 at 10). However, Dr. Rasheed's report indeed states that Plaintiff had "moderate pain behavior and discomfort" and that the "[r]est of [the] physical exam [was] unremarkable." (Tr. 632-33). Plaintiff also faults the ALJ for characterizing Dr. Ahmed's records as reflecting mild low back pain instead of moderate, constant, and chronic pain, which other records reflect. (Doc. # 14-1 at 11). Even so, substantial evidence still supports the ALJ's credibility determination because the medical evidence characterizes Plaintiff's degenerative disc disease as mild, although she claims moderate pain symptoms. (Tr.

446 (ambulatory, normal gait), 456 (normal cervical spine), 469 (mild degenerative disc disease in lumbar spine), 472-73 (normal cervical and thoracic spine)). Overall, the ALJ concluded, "[t]he objective medical evidence does not substantiate the level of discomfort or limitations the claimant describes, all of which reflects somewhat on her credibility." (Tr. 23). "The objective diagnostic x-rays and other films considered with the overall clinical findings do not support the degree of impairment alleged and [Plaintiff] was simply not that convincing." (Tr. 24).

### d. Mental impairments

Plaintiff also argues that the ALJ failed to credit her allegations of mental impairments, including symptoms of depression and anxiety, that would reduce her RFC. (Doc. # 14-1 at 12-15). But the ALJ explained that "various providers routinely describe a normal psychological presentation for an individual they find alert/cooperative/pleasant and so on," which is "[i]nconsistent with [Plaintiff's] pain complaints and allegations of anxiety/depression." (Tr. 24). Even after the tragedy of her boyfriend's passing, the ALJ noted that Plaintiff "returned to work . . . and worked to December 2011." (Tr. 23). And despite reporting flashbacks to one doctor on February 11, 2014, Plaintiff "denied mood swings, depression, anxiety, disturbances of emotion and disturbances of memory" to a different doctor the very next day. (Tr. 21, 685, 701). The ALJ found that this, in addition to other evidence, "reflects negatively . . . on the claimant's reliability." *Id.*

In addition to inconsistencies with the medical evidence, Plaintiff's claims regarding her mental limitations were also inconsistent with her activities of daily living. The ALJ noted that Plaintiff is the primary caretaker for her son, gets him off to school and helps him with his homework, and although she does not finish what she starts, she only

11

sometimes has trouble wrapping up final details in a project once the challenging parts are done. (Tr. 23-24, 541). Plaintiff has trouble focusing, but rarely makes careless mistakes working on a boring or difficult project and only sometimes avoids or delays starting tasks that require a lot of thought. *Id.* The ALJ explained that such conflicting evidence further "reflect[s] on credibility." (Tr. 21-24).

Finally, Plaintiff faults the ALJ for not considering Plaintiff's repeated changes in psychiatric medication while she was treated at Central Kentucky Behavioral Health and claims that such changes show that her symptoms were not "well-managed." (Doc. # 14-1 at 15); 20 C.F.R. § 404.1529(c)(3). The March 2014 hearing reflects that Plaintiff stopped going to Central Kentucky Behavioral Health in June of 2013, but her family doctor continued to prescribe Lamictal, Topamax, Inderal, and Risperdal. (Tr. 73-75). The fact that the ALJ did not specifically find that Plaintiff's previous changes in medication bolster her credibility about her symptoms is not a reason to overturn his credibility determination, which is supported by substantial evidence. *Cf. Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 666 (6th Cir. 2004) ("[T]he fact that [plaintiff] sought treatment for her pain does not by itself dictate a finding that [her] allegations of pain were credible, particularly in light of the substantial evidence in the record calling into question whether [her] pain was as severe as alleged."); *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.") (internal quotation marks omitted).

As detailed above, the ALJ found that Plaintiff's allegations regarding her pain and psychological limitations were inconsistent with medical records, with her activities of daily

living, and with her own testimony. "[T]he claimant was generally credible regarding the nature of her impairments but she was not credible in her assertion that she is unable to perform work activity consistent" with the RFC. (Tr. 23). Therefore, the ALJ concluded that Plaintiff's statements regarding the effects of her symptoms on her ability to perform basic work functions were "of limited weight." *Id.* Having reviewed the ALJ's credibility assessment, which detailed the inconsistencies between Plaintiff's testimony, subjective complaints of pain, and the objective medical evidence, the Court finds no error.

### 2. The ALJ gave good reasons for rejecting the opinions of the consultative physicians.

Plaintiff next argues that the ALJ improperly rejected the opinions of the consultative physicians, Dr. Nold and Dr. Fishkoff. In social security disability cases, medical evidence may come from treating sources, non-treating sources and non-examining sources. 20 C.F.R. § 404.1502. A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her. *Id.*

In deciding how much weight to give the opinion of a non-treating source, the ALJ must consider the length, frequency, nature and extent of the treatment relationship; evidence in support of the opinion; consistency of the opinion with evidence in the record; physician's specialization; and other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c)(1)-(6).

In particular, Plaintiff faults the ALJ for leaving out "many of the objective findings from the 2014 physical consultative evaluation performed by Dr. Nold," including his diagnoses of rheumatoid arthritis and osteoarthritis, as well as his opinion that Plaintiff needed to change positions every 20 to 30 minutes, needed to lie down during the day

13

for unspecified periods of time, and could not walk on rough or uneven surfaces. (Doc. # 14-1 at 3, 11). The ALJ explained that he rejected Dr. Nold's findings of limitations in excess of the RFC because of the medical evidence that contradicted it—the lack of heat, redness, or deformity in Plaintiff's joints during her examination (Tr. 704), her normal x-ray findings (*id.* at 705), her normal gait with no limp (*id.*), and the fact that Plaintiff's purported reduced grip strength and problems with fine manipulation conflicted with other reports showing no such limitations. (Tr. 685). The ALJ need not give controlling weight to the opinion of a non-treating physician, like Dr. Nold, that is unsupported by medical evidence or inconsistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); *id.* § 404.1527(c)(4) ("the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"). Dr. Nold's opinion of Plaintiff's RFC also conflicted with that of the state agency reviewing physicians, whose opinions were more consistent with the entire record. *See id.*, Tr. 131-32.

Plaintiff also challenges the ALJ's rejection of the 2012 and 2014 opinions of psychologist Dr. Fishkoff, who opined about Plaintiff's mental impairments. (Doc. # 14-1 at 12-15). Dr. Fishkoff opined that Plaintiff's ability to "understand, retain, and follow instructions" and "sustain attention to perform simple and repetitive tasks" as would be required over an eight-hour work day was "moderately impaired" in 2012 (Tr. 422) and "impaired" in 2014 (Tr. 723). In both evaluations, Dr. Fishkoff opined that Plaintiff "does

14

not appear to be capable of tolerating the stress and pressures associated with day-to-day work activity." (Tr. 422, 723).

Although the ALJ found that Plaintiff suffered from anxiety/affective disorders at Step 2, at Step 4 he determined that she could "perform routine work tasks effectively over time," but "would work best in a job that did not require constant interaction with coworkers and supervisors." (Tr. 22). Despite limiting Plaintiff in this way, the ALJ explained that he did not give much weight to Dr. Fishkoff's opinion of the "marked/extreme limitations" on Plaintiff's RFC because her opinion was "not well-supported in the narrative report." (Tr. 20). Other portions of Dr. Fishkoff's narrative report described the Plaintiff's thoughts and speech as sequential, goal directed, clear, and coherent. (Tr. 20, 718). Moreover, other record evidence indicated relatively normal psychological presentation from Plaintiff (describing her as "alert," "cooperative," and "pleasant," with "normal" affect and mood), even during extremely difficult times in close proximity to the tragedy of finding her boyfriend dead from suicide. (Tr. 347, 353, 355, 357, 359, 426, 429-30, 433, 480, 482, 486, 488, 518, 521, 528, 579, 587, 600, 606, 616, 666, 746, 754, 756).

In addition, and as mentioned in the credibility analysis above, the ALJ considered Plaintiff's activities of daily living—she is the primary caretaker for her son, gets him off to school and helps him with his homework, and although she does not finish what she starts, she only sometimes has trouble wrapping up final details in a project once the challenging parts are done. (Tr. 23-24, 541). The ALJ explained that such evidence is not supportive of the marked/extreme limitations suggested by Dr. Fishkoff, but rather, a

more mild limitation, and that the inconsistency between Dr. Fishkoff's opinion and other record evidence undermined the doctor's conclusions. (Tr. 21-24).

Because the ALJ explained how much weight he gave to the opinions of Dr. Nold and Dr. Fishkoff, non-treating sources, and because he detailed his reasons for doing so in accordance with 20 C.F.R. § 404.1527(c), the Court finds that this portion of the ALJ's Step 4 analysis is supported by substantial evidence.

### 3. The ALJ's opinion is supported by substantial evidence.

"In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [the ALJ] will consider all of the medical and nonmedical evidence" in the record. 20 C.F.R. § 404.1545(e). The ALJ is only required to incorporate those limitations that he or she finds credible into the RFC assessment. *Irvin v. Social Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Plaintiff argues that the ALJ's opinion is not supported by substantial evidence because the ALJ considered Plaintiff's global assessment of functioning (GAF) scores improperly. Specifically, Plaintiff argues that the ALJ did not consider her GAF scores in the context of other evidence of impairment when the scores were in a range that reflected a mild level of impairment. (Doc. # 14-1 at 13-15). That argument is not supported by the ALJ's opinion, which indicates careful consideration of the GAF scores in addition to doctor's opinions of the Plaintiff's psychological presentation as well as Plaintiff's own statements about her ability to function. (Tr. 20-21).

In addition, Plaintiff broadly alleges that the ALJ's determination is not supported by substantial evidence. But much of Plaintiff's argument amounts to an allegation that

16

the ALJ cherry-picked evidence to support his RFC finding. However, "this allegation is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). That is not the role of this Court. "When deciding under 42 USC § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

At Step Four of the analysis, the ALJ carefully reviewed the record and found that Plaintiff was capable of doing light work with the limitations specified. (Tr. 22-24). The ALJ examined the evidence related to each of Plaintiff's impairments and described why they were not disabling. (Tr. 18-24). He incorporated certain suggested limitations, explained why he rejected limitations from certain non-treating sources, considered the objective medical evidence, and properly discounted Plaintiff's subjective symptoms to the extent that they lacked credibility. Because the ALJ incorporated the limitations that he found credible in the RFC and properly weighed the medical opinion testimony, there is no error. Accordingly, substantial evidence supports the ALJ's determination that Plaintiff was not disabled.

### III.     CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)     The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2)     Plaintiff's Motion for Summary Judgment (Doc. # 12) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 15) is hereby **GRANTED**; and

(4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 2nd day of May, 2017.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\SocialSecurity\MOOs\Lexington\16-180 Cromer MOO.docx